UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

WORLDWIDE CONTRACTING, INC.
and MARINA & BOAT SERVICES,
INC. d/b/a SANDY BOTTOMS BOAT
RENTAL,                                                                Case No:

      Plaintiffs,
v.

PORT TARPON MARINA ASSOCIATES,
LTD.,

      Defendants.
_____/

**VERIFIED COMPLAINT**

Plaintiffs, Worldwide Contracting, Inc. ("WCI") and Marina & Boat Services, Inc. d/b/a Sandy Bottoms Boat Rental ("Sandy Bottoms"), as the respective owners of the vessels which are the subject of this action (and more fully described below), sue Defendant, Port Tarpon Marina Associates, LTD. ("Port Tarpon"), and allege as follows:

**Parties, Jurisdiction, and Venue**

1. This is an action within the scope of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of this Honorable Court as set forth in 28 U.S.C. §1333.

2. This Complaint is brought pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims and is an action for possession and a petitory action for the vessels described more fully below.

3. Plaintiff WCI is a Florida corporation.

4. Plaintiff Sandy Bottoms is a Florida corporation and is in the business of boat rentals and chartering.

5. Skip Drish is a U.S. Coast Guard licensed Captain ("Capt. Drish") and is the principal of both WCI and Sandy Bottoms.

6. Defendant Port Tarpon is a New York Limited Partnership and is engaged in the business of operating a marina.

### General Allegations

### Introduction

7. Port Tarpon operates a marina in Tarpon Springs, Florida which has been the subject of numerous consumer complaints and local code violations due to the marina's dilapidated condition.

8. This case arises out of Port Tarpon's systematic and intentional attempt to improperly obtain ownership of five (5) vessels owned by WCI and Sandy Bottoms and which are used for boat rentals or charters. Specifically, Port Tarpon's use of Section 328.17, Florida Statutes was improper because Port Tarpon did not properly charge for storage with respect to the vessels and failed to provide proper notice as required by Section 328.17.

9. At all material times, Port Tarpon knew that WCI and Sandy Bottoms owned the subject vessels and that Capt. Drish was the person responsible for the subject vessels. Moreover, Port Tarpon had actual knowledge of the current addresses for WCI, Sandy Bottoms, and Capt. Drish but instead decided to serve the purported Notices of Non-Judicial Sale at addresses known to no longer be associated with WCI, Sandy Bottoms, or Capt. Drish.

## Background of Vessels and Notices of Non-Judicial Sale

### *The Sea-Ray*

10.     WCI is the owner a 2001 29'6" Sea-Ray vessel ("Sea-Ray") which WCI purchased in 2006. A copy of the Registration is attached as **Exhibit A**.[1]

11.     The Sea-Ray is offered for charter by Capt. Drish.

12.     In or around August 2016, WCI contracted with Port Tarpon to store the Sea-Ray at a rate of $10.15/day.

13.     From August 2016 through August 2017 WCI timely paid the contractually agreed upon storage rate. During this time, the Sea-Ray was hired for numerous charters and Capt. Drish regularly visited the marina. In fact, the parties were negotiating a lease for office space at the marina for Sandy Bottoms to operate a boat rental and charter business. Sandy Bottoms also renovated the office space, procured signage, and was renting boats from the marine.

14.     On June 29, 2017, Port Tarpon negligently damaged the port engines of the Sea-Ray by attempting to flush the engine without turning on the necessary water supply. As a result, the engine overheated, damaged several of the engine's cylinders and head, and lost significant compression rendering the Sea-Ray un-usable. The employee who damaged the port engine explained to Capt. Drish that he forgot to turn on water.

15.     Thereafter, a dispute arose between WCI and Port Tarpon as to who was responsible for repairing the engine.

16.     WCI stopped paying storage fees in October 2017—approximately three months after Port Tarpon damaged the Sea-Ray—because the Sea-Ray was unable to be chartered and

---

[1] The 2014 Registration is attached as Exhibit A because the most current registration is onboard the Sea-Ray.

Capt. Drish was losing income. Port Tarpon's General Manager, Jim Carlevatti, stated there would be no storage fees charged to Capt. Drish while the Sea-Ray was repaired.

17. The parties continued to negotiate in an attempt to settle the dispute. However, in October 2018, while the parties were still negotiating and unbeknownst to Capt. Drish, Port Tarpon already retitled the Rental Vessels out of Capt. Drish's control and attempted to assert a lien against the Sea-Ray for unpaid storage fees.

18. Accordingly, on October 23, 2018, Capt. Drish was served with a Notice of Non-Judicial Sale regarding the Sea-Ray. A copy of the Notice of Non-Judicial Sale is attached as **Exhibit B**.

19. The Notice of Non-Judicial Sale purported to establish a lien in favor of Port Tarpon against the Sea-Ray in the amount of $4,818.06 based on the following itemized charges:

- Storage Charges: $4,312.10 for 245 days at a daily rate of $10.15
- Service Fees: (Gas) $295.68; (Ice) $10.28
- Administrative Fees: $200.00

20. In the event that WCI did not pay the amount demanded above, a public sale was scheduled for December 26, 2018 at 11:00 a.m.

21. Prior to the scheduled public sale, Capt. Drish contacted counsel for Port Tarpon and requested the amount due to retake possession of the Sea-Ray. Port Tarpon demanded the following amounts via email on December 14, 2018:

- Rent: $6,269.13
- Interest: $779.16
- Administrative: $2,500.00
- Legal: $2,475.00

4

- Total: $12,023.29

The email chain regarding the amounts demanded is attached as **Exhibit C**.

22. As established by the December 14, 2018, Port Tarpon demanded amounts in excess of those permitted by Section 328.17 (i.e. legal fees and an increased administrative fee) in order for WCI to re-take possession of the Sea-Ray. Port Tarpon would not accept the amount as set forth in the Non-Judicial Sale in contravention of Section 328.17.

23. As a result, Capt. Drish, on behalf of WCI, attempted to post a bond in the actual amount due to prevent the unlawful public sale. A copy of the Bond is attached as **Exhibit D**.

24. The bond required that the lienor (Port Tarpon) release the Sea-Ray to WCI. Port Tarpon refused to do so and, ultimately, the bond was dissolved on December 29, 2018 by way of Court Order because the Court found it to be inapplicable to Section 328.17.

25. However, because the Bond was in place at the time of the scheduled public sale, the sale could not have gone forward. Notwithstanding, Port Tarpon proceeded with the public sale while the bond was pending and did not re-serve a new Notice of Non-Judicial Sale setting a new public sale date.

26. Because Port Tarpon demanded amounts in excess of the amounts permitted by Section 328.17 and also proceeded with the public sale despite the Bond preventing such sale, the October 23, 2018 Notice of Non-Judicial Sale was invalid and WCI is the rightful owner of the Sea-Ray.

*Catamaran*

27. Sandy Bottoms is the owner of a 1963 56'0" Bellow & C Catamaran ("Catamaran") which was purchased by Sandy Bottoms on August 24, 2017. A copy of the Bill of Sale is attached as **Exhibit E**.

28. Sandy Bottoms purchased the Catamaran from Brian Bandura who stored the Catamaran at Port Tarpon.

29. Capt. Drish thereafter notified Port Tarpon that Sandy Bottoms was the new owner of the Catamaran. Port Tarpon and Capt. Drish even discussed where the Catamaran was to be stored.

30. The Catamaran remained stored at Port Tarpon after the purchase by Sandy Bottoms.

31. In fact after purchasing the Catamaran, Capt. Drish performed numerous repairs to the Catamaran while it was stored at the marina and with the consent of the marina.

32. On August 24, 2018, a year after Port Tarpon had actual knowledge that Sandy Bottoms owned the Catamaran, Port Tarpon noticed the Catamaran for Non-Judicial Sale based on a purported lien for storage. A copy of the Notice of Non-Judicial Sale is attached as **Exhibit F**.

33. However, the Notice of Non-Judicial Sale did not identify Sandy Bottoms or Capt. Drish as the Registered Owner or Tenant nor was Sandy Bottoms or Capt. Drish served with the Notice of Non-Judicial Sale as required by Section 328.17.

34. Upon information and belief, the Catamaran was purchased by Port Tarpon at the public sale on October 29, 2018.

35. Therefore, Sandy Bottoms is the rightful owner of the Catamaran and Port Tarpon has unlawfully sold the Catamaran without providing proper notice to Sandy Bottoms or Capt. Drish pursuant to Section 328.17.

*Sandy Bottoms' Rental Vessels*

36. On or about July 31, 2017, Sandy Bottoms purchased three vessels which were intended to be used as part of Sandy Bottoms' boat rental business and stored at Port Tarpon.

37. Specifically, Sandy Bottoms purchased a 2014 19'4" pontoon boat, a 2016 24'0" pontoon boat, and a 2011 20'4" Angler center console ("Rental Vessels"). Copies of the respective Certificates of Title are attached as **Composite Exhibit G**.

38. Because the Rental Vessels were purchased just prior to Hurricane Irma, the Rental Vessels, along with the Catamaran, had to be secured to withstand the impending storm forces. In fact, all of the vessels at Port Tarpon were secured prior to Hurricane Irma.

39. The Rental Vessels were moved to the mechanic's yard at Port Tarpon which is independently leased from Port Tarpon. Sandy Bottoms was not required to pay storage fees at the mechanic's yard because they shared office space and had a business relationship.

40. Notwithstanding, after Hurricane Irma, Port Tarpon, without notice and authorization, removed the Rental Vessels from the mechanic's yard and attempted to charge Sandy Bottoms transient storage fees.

41. On March 23, 2018, Port Tarpon noticed the Rental Vessels for Non-Judicial Sale pursuant to Section 328.17. A copy of the Notice of Non-Judicial Sale is attached as **Exhibit H**.

42. Capt. Drish was listed as the "Tenant" on each notice and each notice was addressed to 16513 Ivy Lake Dr., Odessa, Florida 33556. The notices were returned to sender.

43. The 16513 Ivy Lake Dr. address was not the last known address for Capt. Drish or Sandy Bottoms as Capt. Drish was no longer associated with that address since approximately June 2017.

44. Port Tarpon had actual knowledge that this was not the proper address as Capt. Drish, on more than one occasion, provided his address (140 Island Way Unit 271, Clearwater Beach, Florida 33767) to Port Tarpon and its staff. Therefore, the Notices of Non-Judicial Sale were invalid.

45. All conditions precedent to the bringing and maintenance of this action and the granting of relief requested herein have been performed, have occurred, or have been waived.

46. Plaintiff has retained the undersigned law firm and is obligated to pay its attorneys a reasonable fee for the services rendered in connection with this case.

### COUNT I – Rule D Claim for Possession
### (Sea-Ray)

Plaintiff, WCI, realleges and incorporates paragraphs 1 through 46 above.

47. Defendant, Port Tarpon, by and through its agents, wrongfully removed and now possesses the Sea-Ray which is rightfully owned by WCI.

48. The Sea-Ray can be identified in accordance with Exhibit A attached hereto.

49. WCI has had to retain the services of the undersigned in order to recover the Sea-Ray.

WHEREFORE, Plaintiff WCI respectfully requests that this Court:

(a) enter a petitory order under Rule D, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions declaring WCI as the rightful owner of the Sea-Ray;

(b) enter an Order requiring Port Tarpon to return the Sea-Ray;

(c) an award for diminution in value of the Sea-Ray;

(d) an award attorney's fees pursuant to the dockage and storage agreement between the parties for the necessity of having to bring this lawsuit; and

(e) for any other relief this Court deems just and proper.

### COUNT II – Rule D Claim for Possession
### (Catamaran)

Plaintiff, Sandy Bottoms, realleges and incorporates paragraphs 1 through 46 above.

50. Defendant, Port Tarpon, by and through its agents, wrongfully removed and now possesses the Catamaran which is rightfully owned by Sandy Bottoms.

51. The Catamaran can be identified in accordance with Exhibit B attached hereto.

52. Sandy Bottoms has had to retain the services of the undersigned in order to recover the Catamaran.

WHEREFORE, Plaintiff Sandy Bottoms respectfully requests that this Court:

(a) enter a petitory order under Rule D, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions declaring Sandy Bottoms as the rightful owner of the Catamaran;

(b) enter an Order requiring Port Tarpon to return the Catamaran;

(c) an award for diminution in value of the Catamaran; and

(d) for any other relief this Court deems just and proper.

## COUNT III – Rule D Claim for Possession
### (Rental Vessels)

Plaintiff, Sandy Bottoms, realleges and incorporates paragraphs 1 through 46 above.

53. Defendant, Port Tarpon, by and through its agents, wrongfully removed and now possesses the Rental Vessels which are rightfully owned by Sandy Bottoms.

54. The Rental Vessels can be identified in accordance with Composite Exhibit G attached hereto.

55. Sandy Bottoms has had to retain the services of the undersigned in order to recover the Rental Vessels.

WHEREFORE, Plaintiff Sandy Bottoms respectfully requests that this Court:

(a) enter a petitory order under Rule D, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions declaring Sandy Bottoms as the rightful owner of the Rental Vessels;

(b) enter an Order requiring Port Tarpon to return the Rental Vessels;

(c) an award for diminution in value of the Rental Vessels; and

(d) for any other relief this Court deems just and proper.

## COUNT IV – Conversion
## (Sea-Ray)

Plaintiff, WCI, realleges and incorporates paragraphs 1 through 46 above.

56. Since 2006, WCI has been the rightful owner of Sea-Ray.

57. Port Tarpon knew that the Sea-Ray was owned by WCI.

58. Port Tarpon converted the Sea-Ray for its own use and benefit.

59. WCI has demanded the return of the Sea-Ray but Port Tarpon has refused.

WHEREFORE, Plaintiff WCI respectfully requests this Court enter judgment against Defendant, Port Tarpon, for damages, costs and further relief as this Court deems just and proper.

## COUNT V – Conversion
## (Catamaran and Rental Vessels)

Plaintiff, Sandy Bottoms, realleges and incorporates paragraphs 1 through 46 above.

60. Since July 2017 and August 2017, Sandy Bottoms has been the rightful owner of Rental Vessels and Catamaran.

61. Port Tarpon knew that the Catamaran and Rental Vessels were owned by Sandy Bottoms.

62. Port Tarpon converted the Catamaran and Rental Vessels for its own use and benefit.

63. Sandy Bottoms has demanded the return of the Catamaran and Rental Vessels but Port Tarpon has refused.

WHEREFORE, Plaintiff Sandy Bottoms respectfully requests this Court enter judgment against Defendant, Port Tarpon, for damages, costs and further relief as this Court deems just and proper.

## COUNT VI – Unjust Enrichment
### (Sea-Ray)

Plaintiff, WCI, realleges and incorporates paragraphs 1 through 46 above.

64. Port Tarpon wrongfully obtained ownership to the Sea-Ray that rightfully belonged to WCI.

65. Port Tarpon voluntarily accepted and retained the benefit of the Sea-Ray without paying fully value of same.

66. It would be inequitable for Port Tarpon to retain the benefit of the Sea-Ray without paying the full value to WCI.

WHEREFORE, Plaintiff WCI respectfully requests this Court enter judgment against Defendant, Port Tarpon, for damages, costs and further relief as this Court deems just and proper.

## COUNT VII – Unjust Enrichment
### (Catamaran and Rental Vessels)

Plaintiff, Sandy Bottoms, realleges and incorporates paragraphs 1 through 46 above.

67. Port Tarpon wrongfully obtained ownership to the Catamaran and Rental Vessels that rightfully belonged to Sandy Bottoms.

68. Port Tarpon voluntarily accepted and retained the benefit of the Catamaran and Rental Vessels without paying fully value of same.

69. It would be inequitable for Port Tarpon to retain the benefit of the Catamaran and Rental Vessels without paying the full value to Sandy Bottoms.

WHEREFORE, Plaintiff Sandy Bottoms respectfully requests this Court enter judgment against Defendant, Port Tarpon, for damages, costs and further relief as this Court deems just and proper.

Dated:  January 25, 2019                         /s/ Anthony J. Severino
                                                                          Anthony J. Cuva
                                                                          Florida Bar No. 896251
                                                                          Email: anthony.cuva@bajocuva.com
                                                                          Anthony Severino
                                                                          Florida Bar No. 093452
                                                                          Email: aseverino@bajocuva.com
                                                                          BAJO CUVA COHEN & TURKEL P.A.
                                                                          100 North Tampa Street, Suite 1900
                                                                          Tampa, Florida  33602
                                                                          Phone:  (813) 443-2199
                                                                          Fax: (813) 221-2193
                                                                          Attorneys for Plaintiffs

{BC00185586:1}

## **VERIFICATION**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

I, SKIP DRISH, pursuant to 28 U.S.C. § 1746, declare the following to be true under penalty of perjury under the laws of the United States of America:

I am the owner of Worldwide Contracting, Inc. and Marina & Boat Services, Inc. d/b/a Sandy Bottoms Boat Rental, and have read the foregoing Verified Complaint and state the facts and matters alleged and contained therein are true and correct; and that the declarant has made this declaration upon my own person knowledge and know the contents thereof, and that same is true, except as to those matters stated to be upon information and belief, and to those matters I believe to be true.

I declare under the penalty of perjury that the foregoing is true and correct.

Worldwide Contracting, Inc.
By: _[signature]_
Printed Name: SKIP DRISH
Its: PRESIDENT/CEO

Marina & Boat Services, Inc. d/b/a Sandy Bottoms Boat Rental
By: _[signature]_
Printed Name: SKIP DRISH
Its: CEO

{BC00185586:1}